UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

JEFFREY SLADE TAFIL,

        Petitioner,                      Case No. 1:08-cv-590

v.                                                Honorable Gordon J. Quist

SHERRY BURT,

        Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner is serving a term of eight to twenty years, imposed by the Allegan County Circuit Court on July 13, 2005, after Petitioner pleaded guilty to one count of operating or maintaining a methamphetamine lab, MICH. COMP. LAWS § 333.7401c(2)(f). In his *pro se* petition, Petitioner raises two grounds for relief, as follows:

    I.    MICHIGAN PREJUDICIALLY VIOLATED PETITIONER'S CONSTITUTIONAL PROCEDURAL DUE PROCESS RIGHTS BY DENYING MOTION TO WITHDRAW GUILTY PLEA.

    II.   MICHIGAN PREJUDICIALLY VIOLATED PETITIONER'S PROCEDURAL DUE PROCESS RIGHTS BY USING UNPROVEN FACTS TO INCREASE PRISON SENTENCE.

(Pet., 6-7, docket #1.) Respondent has filed an answer to the petition (docket #11) stating that the grounds should be denied because they are procedurally defaulted or without merit. Upon review and applying the AEDPA standards, I find that both grounds are without merit. Accordingly, I recommend that the petition be denied.

## Procedural History

### A. Trial Court Proceedings

The state prosecution arose from the January 29, 2005 theft of anhydrous ammonia from the Hamilton Farm Bureau facility in Martin Township. Petitioner was charged with one count of operating or maintaining a methamphetamine lab, MICH. COMP. LAWS § 333.7401c(2)(f); one count of breaking and entering a building, MICH. COMP. LAWS § 750.110; and one count of transporting or possessing anhydrous ammonia in a container not approved by law for the purpose, MICH. COMP. LAWS § 750.502d. Following a preliminary examination on March 29, 2005, he was bound over on the first and third counts. A supplemental information was filed charging Petitioner as a habitual offender, second offense, MICH. COMP. LAWS § 769.10. Petitioner pleaded guilty on July 13, 2005 to one count of operating a methamphetamine lab, in exchange for the dismissal of the remaining counts of possession of anhydrous ammonia in an unapproved container and being a second felony offender. (Plea Tr., 3, docket #15.) The prosecutor also agreed to recommend that Petitioner's sentence run concurrently with a sentence imposed by Kalamazoo County on an unrelated charge.

On August 5, 2005, the original date of sentencing, Petitioner moved to substitute new counsel. Petitioner indicated that he wished to withdraw his plea on the ground that his attorney had misinformed him about the potential guideline range. He stated that he would not have pleaded guilty had he been properly informed. (8/5/05 Mot. Tr., 2, docket #16.) The court granted the motion to substitute counsel and appointed new counsel. (*Id.* at 3.) Petitioner, through his newly appointed attorney, moved to withdraw the plea on the grounds that it was not made knowingly, voluntarily or with understanding. (9/2/05 Mot. Tr., docket #17.) The prosecutor opposed the

motion on the grounds of prejudice, indicating that Petitioner had pleaded guilty on the day set for trial, when all of the witnesses had been subpoenaed and the parties were ready for trial. Following a hearing held September 2, 2005, the court denied the motion. (*Id.* at 5.)

Petitioner was sentenced on September 9, 2005 to a term of eight to twenty years, to run concurrently with his Kalamazoo County sentence of eighteen months. (9/9/05 S. Tr., 7, docket #18.) The judgment of sentence, however, apparently indicated that the sentence was to be consecutive to the Kalamazoo County sentence.

On September 6, 2006, newly appointed appellate counsel filed a postconviction motion in the trial court to correct the invalid sentence and to correct the judgment of sentence. (Cir. Ct. Docket Sheet #53, docket #13.) Following a hearing held October 20, 2006, the court concluded that the judgment of sentence incorrectly stated that Petitioner's sentence was to run consecutively rather than concurrently. The court also agreed with defense counsel's argument that Offense Variable (OV) 13 had been mis-scored. (10/20/06 Mot. Tr., 8, docket #19.) The court rejected counsel's remaining arguments regarding the scoring of the sentencing guidelines under OV 2. (*Id.* at 11.)

A new sentencing hearing was held on November 17, 2006. (11/17/06 S. Tr., docket #20.) The court again rejected counsel's argument concerning the scoring of OV 2, but declined to score OV 13. Although the corrections to the sentence scoring lowered the sentencing guidelines range from 78 to 130 months to 72 to 120 months, the court imposed the same minimum sentence of 96 months. (11/17/06 S. Tr., 10.) The new judgment of sentence also was corrected to be concurrent with rather than consecutive to the Kalamazoo County sentence. (*Id.* at 3.)

### B. Direct Appeal

On September 8, 2006, counsel filed a delayed application for leave to appeal in the Michigan Court of Appeals. (Mich. Ct. App. Docket Sheet, Case No. 272949.[1]) In his application, Petitioner raised three grounds for relief, the first two of which were identical to the sentencing issues raised in Petitioner's postconviction motion to correct the sentence. The third issue is identical to Petitioner's first ground for habeas review. By unpublished order issued on October 17, 2006, the Michigan Court of Appeals denied the delayed application for leave to appeal for lack of merit in the grounds presented. (*See* 10/17/06 Mich. Ct. App. Ord. (MCOA Ord.), docket #21.) Petitioner sought reconsideration, which was denied on December 5, 2006. (*See* 12/5/06 MCOA Ord., docket #21.)

After Petitioner was resentenced, Petitioner filed another delayed application for leave to appeal to the Michigan Court of Appeals, raising his second ground for habeas relief and certain state-law sentence scoring arguments. On September 10, 2007, the court of appeals denied leave to appeal for lack of merit in the grounds presented. (9/10/07 MCOA Ord., docket #24.)

Petitioner filed a *pro per* application for leave to appeal to the Michigan Supreme Court. Petitioner raised only his sentencing-guidelines claim. By order entered January 30, 2008, the Michigan Supreme Court denied his application for leave to appeal because it was not persuaded that the questions presented should be reviewed. (See Mich. Ord., docket #22.)

---

[1]*See* Mich. Ct. of Appeals Electronic Docket Record, http://coa.courts.mi.gov/resources/asp?casenumber =272949&inqtype=public&yr08yr=0 (last visited Aug. 14, 2009).

- 4 -

## Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are

materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410.

Where the state court has not articulated its reasoning, the federal courts are obligated to conduct an independent review to determine if the state court's result is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented. *See Harris*, 212 F.3d at 943; *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003). Where the circumstances suggest that the state court actually considered the issue, the review is not *de novo*. *Onifer*, 255 F.3d at 316. The review remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *Harris*, 212 F.3d at 943.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is

presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

## **Discussion**

I.  Involuntary Plea

In his first ground for habeas relief, Petitioner contends that he was denied his right to due process when the trial court denied his request to withdraw his guilty plea. He argues that his plea was not entered knowingly, voluntarily or with understanding because his attorney incorrectly advised him about the sentencing guideline range for his offense.

Respondent argues that Petitioner failed to exhaust his claim because he did not raise it in his direct appeal to the Michigan Supreme Court. Respondent further contends that, under MICH. CT. R. 6.508(D)(2), the claim must be considered procedurally defaulted because Petitioner cannot raise in a post-conviction motion grounds "which were decided against the defendant in a prior appeal or proceeding."

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the

violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks v. Straub*, 377 F.3d 538, 551-52 (6th Cir. 2004). Respondent asserts that Petitioner's first ground for habeas relief should be denied because he has failed to demonstrate either ground for excusing the procedural default.

The Court declines to address the question of procedural default. The U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)). *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Where, as here, the procedural default issue raises more questions than the case on the merits, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default. *See Cone v. Bell*, 243 F.3d 961, 971 (6th Cir. 2001), *rev'd on other grounds*, *Bell v. Cone*, 535 U.S. 685 (2002); *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

A state defendant has no constitutionally guaranteed right to withdraw a guilty plea. *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989). The only constitutional challenge that a habeas court may entertain with regard to a plea of guilty is that the plea was not entered in a knowing and

voluntary fashion under the standards set forth in *Boykin v. Alabama*, 395 U.S. 238 (1969). A habeas court is restricted to these federal principles, and may not grant habeas relief on the basis of state law governing the taking or withdrawal of guilty pleas. *Riggins v. McMackin*, 935 F.2d 790, 794-95 (6th Cir. 1991). Consequently, the question whether petitioner should have been allowed in the court's discretion to withdraw his guilty plea under state-court rules is not reviewable in habeas corpus.

In order to find a constitutionally valid guilty plea, several requirements must be met. The defendant pleading guilty must be competent, *see Brady v. United States*, 397 U.S. 742, 756 (1970), and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n. 13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n. 13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). Finally, the defendant must have available the advice of competent counsel. *Tollett v. Henderson*, 411 U.S. 258, 267-68 (1993); *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970).

The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel).

Under settled Sixth Circuit authority, Petitioner's responses to the trial judge, given under oath at the plea hearing, preclude his present assertion that he believed his sentence would be within a particular range. In *Baker v. United States*, 781 F.2d 85 (6th Cir. 1986), the trial court inquired concerning the terms of any plea bargain, received a response from the prosecutor on the record, and received denials from defense counsel, the prosecutor, and the defendant concerning the existence of any other terms. The Sixth Circuit held that where the trial court has scrupulously followed the required procedure, "the defendant is bound by his statements in response to that court's inquiry." 781 F.2d at 90 (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)); *see also Ramos v. Rogers*, 170 F.3d 560, 563-64 (6th Cir. 1999) (applying *Baker* standard to § 2254 case). The Sixth Circuit, noting the obvious, observed that a trial judge cannot possibly administer a plea agreement, if it consists of "secret terms known only to the parties." *Id.* at 90. Furthermore, because defendant's later claim of a secret agreement was negated by the trial record, no evidentiary hearing was required. *Id.* at 92. The court again addressed this issue in *Warner v. United States*, 975 F.2d 1207 (6th Cir. 1992), and *United States v. Todaro*, 982 F.2d 1025 (6th Cir. 1993), both of which were § 2255 cases. In *Todaro*, the defendant attempted to attack his guilty plea, claiming that his attorney had promised him that he would be sentenced to probation if he pled guilty. The defendant had testified at the plea colloquy, however, that no other promises had been made to him,

other than those stated in the plea agreement. 982 F.2d at 1026. Consequently, the Sixth Circuit was again faced with a situation in which a defendant's post-conviction allegations were directly contrary to his statements at the plea hearing. Relying on *Baker*, the court reiterated its earlier holding, under which a defendant is bound by his statements in response to the trial court's inquiry, where there has been a careful plea colloquy. In *Warner*, the Sixth Circuit likewise rejected claims of attorney promises in the face of defendant's flat denial of promises at the plea, holding that the petitioner's statements "estopped" him from relying on undisclosed promises. 975 F.2d at 1210.[2]

In the instant case, as in *Baker*, *Warner* and *Todaro*, the trial court scrupulously advised Petitioner of the consequences of his plea, the nature of the rights he was waiving and inquired about all promises that had been made to Petitioner. At the outset of the hearing, the prosecutor described the charge to which Petitioner intended to plead guilty:

> MR. KENGIS: Your Honor Mr. Tafil will be entering a plea to Count 1 and I will read that into the record. It alleges that on or about January 29th of 2005 in Martin Township, Allegan County, Michigan, the defendant did own or possess a chemical or laboratory equipment that he or she knew or had reason to know was to be used or was intended to be used for the purpose of manufacturing methamphetamine; contrary to MCL 333.7401c(2)((f). This is a felony punishable by up to 20 years in prison and/or $25,000, and also drivers license sanctions.

(Plea Tr., 2.) After questioning Petitioner about his competence and understanding of the language and proceedings, the trial court asked if Petitioner understood the nature of the charge as read:

> THE COURT: Did you understand this charge that the prosecutor just read into the record?

---

[2] Thereafter, the court in *Peavy v. United States*, 31 F.3d 1341 (6th Cir. 1994), ordered an evidentiary hearing to inquire into allegations of an undisclosed plea agreement. The *Peavy* court noted that the government admitted the existence of an oral plea agreement, not reflected at the plea hearing. The court was careful to observe that the trial court had not directly asked the defendant whether there were any promises apart from the plea agreement. "Such inquiries would have prompted disclosure of the promises on which Peavy relies here, or, if Peavy had remained silent, likely would foreclose his post-conviction reliance on [those] promises." 31 F.3d at 1345.

>    MR. TAFIL: Yes, sir.
>
>    THE COURT: *Do you understand that if you're convicted of that offense the most time you could receive would be 20 years in prison?*
>
>    MR. TAFIL: *Yes, sir.*

(Plea Tr., 3 (emphasis added).) The prosecutor then outlined the terms of the plea agreement, which both defense counsel and Petitioner acknowledged was correctly stated:

>    THE COURT: Is there a plea agreement Mr. Kengis?
>
>    MR. KENGIS: Yes, your Honor. Upon successful sentence on Count 1 the People would move to dismiss Count 2, possession of anhydrous ammonia in an unapproved container and the habitual offender second offense notice. Additionally I have indicated to Mr. Hunter that I would be recommending a sentence that's concurrent to the defendant's present prison term, but he understands that the Court would not be bound by that recommendation.
>
>    THE COURT: Is that a correct statement Mr. Hunter?
>
>    MR. HUNTER [DEFENSE COUNSEL]: It is, your Honor.
>
>    THE COURT: Mr. Tafil do you understand that agreement?
>
>    MR. TAFIL: Yes, sir.
>
>    THE COURT: And do you understand that while I might follow the prosecutor's recommendation as to consecutive (sic), I'm not required to do so. Do you understand that?
>
>    MR. TAFIL: Yes, sir.
>
>                  . . .
>
>    THE COURT: Okay. Do you understand – and you want the Court to follow that plea agreement?
>
>    MR. TAFIL: I'd like that sir.

(Plea Tr., 3-4.) The trial court then proceeded to question Petitioner about his understanding of the rights he would waive if he entered a plea of guilty and about the consequences of his plea. Having

sworn an oath to tell the truth, Petitioner also denied that he had been threatened or coerced into entering his plea or had been given any other promises:

> THE COURT: Has anybody threatened you Mr. Tafil to get you to plead guilty?
>
> MR. TAFIL: No, sir.
>
> THE COURT: Have they coerced you in any way *or promised you anything other than this plea agreement*?
>
> MR. TAFIL: No, sir.

(Plea Tr., 6 (emphasis added).) After Petitioner had entered his plea, the court questioned the attorneys about other promises before finding that Petitioner's guilty plea was freely and voluntarily made:

> THE COURT: Do either one of you know of any promises, threats or inducements that are not already in this record?
>
> MR. KENGIS: I have none.
>
> MR. HUNTER: No.
>
> THE COURT: Alright, I'll accept the plea and find the same to be freely, voluntarily and accurately made, and based on the plea find you guilty as charged.

(Plea Tr., 8.)

The plea colloquy unequivocally demonstrates that, at the time he entered his plea of guilty, Petitioner fully understood that he faced a potential sentence of 20 years. He indicated that, knowing those consequences, he freely wished to plead guilty. He further acknowledged that the plea agreement placed on the record was the entire agreement and that he had received no further promises from anyone. In addition, to the extent he intends to argue that his attorney rendered

ineffective assistance of counsel,[3] the Sixth Circuit has recognized that the state court's proper colloquy forecloses any claim that an attorney was ineffective in giving misleading information about the sentencing consequences. *See Ramos*, 170 F.3d at 565 (holding that "a claim of ineffective assistance of counsel predicated on allegedly misleading information given by counsel about the terms of a plea agreement can *never constitute* an "extraordinary circumstance" under *Baker* when the court conducts a proper, clear, and thorough plea colloquy") (emphasis in original); *see also McAdoo v. Elo*, 365 F.3d 487, 497 (6th Cir. 2004) (same, citing *Ramos*); *Boyd v. Yukins*, 99 F. App'x 699, 704 (6th Cir. 2004) (same).

On the whole record, the state court's determination that the plea was knowingly and voluntarily entered and its denial of Petitioner's motion to withdraw the plea constituted entirely reasonable applications of established Supreme Court precedent. I therefore recommend that Petitioner's first ground for habeas relief be denied.

## II. Sentencing Errors

In his second ground for habeas relief, Petitioner raises a compound claim. First, he asserts that the sentencing court improperly scored Offense Variable 2. Second, he argues that his due process rights were violated when his sentence was increased based on facts not found by a jury or admitted by Petitioner.

---

[3]The Court observes that Petitioner has never alleged, either in the state courts or in his habeas petition, that his attorney's mistaken guidelines calculation rose to the level of constitutionally ineffective assistance of counsel. In addition, Petitioner never introduced any evidence that would support such a claim. As discussed, however, even had Petitioner made such a claim, it would not alter the result.

- 14 -

### A. Offense Variable 2

Petitioner argues that he was improperly assessed 15 points on OV 2 based on the lethal potential of anhydrous ammonia. OV 2 is entitled "lethal potential of weapon possessed or used." (10/20/06 Mot. Tr., 9-10.) *See* MICH. COMP. LAWS § 777.32. Petitioner argues that the guideline was not intended to increase a defendant's offense score based solely on the possession of something that had the potential to be used as a weapon but that was not being used by the defendant for that purpose.

Claims concerning the improper scoring of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cheatham v. Hosey*, No. 93-1319, 1993 WL 478854, at *2 (6th Cir. Nov. 19, 1993) (departure from sentencing guidelines is an issue of state law, and, thus, not cognizable in federal habeas review); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law). There is no constitutional right to individualized sentencing. *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Moreover, a criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); *accord Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987).

Although state-law errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'" *Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. Feb. 15, 2005) (citing *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003)). *See also Doyle*, 347 F. Supp. 2d at 485 (a habeas court "will not set aside, on allegations of unfairness or an abuse of discretion, terms of a sentence that is within state statutory limits unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking.") (citation omitted). A sentence also may violate due process if it is based upon material "misinformation of constitutional magnitude." *Koras,* 123 F. App'x at 213 (quoting *Roberts v. United States,* 445 U.S. 552, 556 (1980)); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972)*; Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Koras,* 123 F. App'x at 213 (quoting *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988)). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

Petitioner's sentence clearly is not so disproportionate to the crime as to be arbitrary or shocking. *Doyle*, 347 F. Supp. 2d at 485. Further, Petitioner does not even argue that the facts found by the court at sentencing were either materially false or based on false information. *Tucker*, 404 U.S. at 447. Instead, Petitioner argues only that the state sentencing guideline was applied in

a manner not intended by the legislature. Such a claim clearly implicates only state law and falls far short of the sort of egregious circumstances implicating due process. The state-court's rejection of Petitioner's claim was not based on an unreasonable determination of the facts and was neither contrary to nor an unreasonable application of established Supreme Court precedent. 28 U.S.C. § 2254(d).

### B. *Apprendi/Blakely/Booker Claim*

Petitioner argues that he was deprived of his due process right to a fair trial when the sentencing court made factual findings that increased his sentence. In support of his claim, he relies on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005).

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence. Thereafter, in *Blakely*, 542 U.S. 296, the Court considered the State of Washington's mandatory sentencing guidelines, which allowed a trial judge to elevate the maximum sentence permitted by law on the basis of facts not found by the jury but by the judge. Under the sentencing guidelines, the trial judge found facts that increased the maximum sentence faced by the defendant. The Supreme Court found that this scheme offended the Sixth Amendment, because any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. *Blakely,* 542 U.S. at 301 (citing *Apprendi*, 530 U.S. at 490). *See also Booker*, 543 U.S. at 232 (applying *Blakely* to the federal sentencing guidelines).

Unlike the State of Washington's determinate sentencing system, the State of Michigan has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum term. The maximum sentence is not determined by the trial judge, but is set by law. *See People v. Drohan,* 715 N.W.2d 778, 789-92 (Mich. 2006) (citing MICH. COMP. LAWS § 769.8). Only the minimum sentence is based on the applicable sentencing guideline range. *Id.*; *and see People v. Babcock*, 666 N.W.2d 231, 237 n.7 (Mich. 2003) (citing MICH. COMP. LAWS § 769.34(2)). Therefore, under Michigan law, the trial judge sets the minimum sentence (within a certain range), but can never exceed the maximum sentence. *Drohan,* 715 N.W.2d at 789.

Because the trial court can never exceed the maximum sentence set by statute, Michigan's indeterminate sentencing scheme, unlike the determinate sentencing scheme at issue in *Blakely*, does not infringe on the province of the finder of fact, and, thus, does not run afoul of *Blakely*. *See Blakely,* 542 U.S. at 304-05, 308-09. Because the trial court in the present case sentenced Petitioner well within the parameters of Michigan's indeterminate sentencing scheme, it did not violate his Sixth or Fourth Amendment rights. *See Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007) (affirming district court's dismissal of prisoner's claim under *Blakely v. Washington* because it does not apply to Michigan's indeterminate sentencing scheme); *see also Gray v. Bell*, No. 1:06-cv-611, 2007 WL 172519, at *3 (W.D. Mich. Jan. 19, 2007); *Pettiway v. Palmer,* No. 1:06-cv-132, 2006 WL 1430062, at *1 (W.D. Mich. May 23, 2006); *Stanley v. Jones,* No. 1:06-cv-49, 2006 WL 1459832, at *2 (W.D. Mich. May 23, 2006); *Jones v. Trombley*, No. 2:07-cv-10139, 2007 WL 405835, at *3 (E.D. Mich. Jan. 31, 2007); *Mays v. Trombley*, No. 2:06-cv-14043, 2006 WL 3104656, at *3 (E.D. Mich. Oct. 31, 2006); *Worley v. Palmer,* No. 2:06-cv-13467, 2006 WL 2347615, at *2 (E.D. Mich. Aug. 11, 2006); *George v. Burt*, No. 2:04-cv-74968, 2006 WL 156396,

at *5 (E.D. Mich. Jan. 20, 2006); *Walton v. McKee*, No. 2:04-cv-73695, 2005 WL 1343060, at *3 (E.D. Mich. June 1, 2005). As a consequence, the state courts reasonably applied established Supreme Court precedent in denying Petitioner's federal claim.

### **Recommended Disposition**

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.

Dated: November 2, 2009  /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).